UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                                      )
LARRY LYLE LASKO,                        )
                                                      )
                    Plaintiff,                       )
                                                      )
        v.                                             )        Civil Action No.  08-1850  (PLF)
                                                      )
UNITED STATES DEPARTMENT        )
OF JUSTICE, *et al.*,                        )
                                                      )
                    Defendants.                   )
———————————————————— )

<u>OPINION</u>

        This matter is before the Court on defendant's motion for summary judgment. Having considered defendant's motion, plaintiff's opposition, and the entire record in this case, the Court will grant summary judgment for the defendant.

I.  BACKGROUND

        Plaintiff was convicted "(1) following a jury trial, of conspiring to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846, and (2) following his plea of guilty, of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g).  [He] was sentenced . . . to 210 months' and 120 months' imprisonment, respectively, to run concurrently."  *United States v. Lasko*, 146 Fed. Appx. 530, 531 (2d Cir. 2005) (affirming criminal judgment in part and remanding in part), *cert. denied*, 546 U.S. 1155 (2006).  On remand for reconsideration of the sentence, the trial court "considered all the relevant sentencing factors and determined that the original sentence

was appropriate and reasonable."  *United States v. Lasko*, No. 3:03-CR-0210, 2008 WL 189930, at *1 (N.D.N.Y. Jan. 18, 2008).

Plaintiff brings this action against the United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.[1]  Generally, plaintiff alleges that the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration ("DEA"), both components of DOJ, failed to release the records he requested.[2]

*A.  Request to the Federal Bureau of Investigation*

In February 2008, plaintiff submitted a FOIA request to the FBI's Philadelphia Field Office ("PHFO") for agency records about himself, a business identified as the Quick Lunch Diner in Newark Valley, New York, and about seven individuals, covering the period from January 2001 through January 2003.  Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Def.'s Mem."), Declaration of David M. Hardy

---

[1]    The Court has dismissed the complaint as to defendants Thomas P. Walsh, Lisa Peebles, James Greenwald, Mark J. Nemier, Brian Besser, Scott Paully, Daniel Ortis and the New York State Police on the ground that the FOIA authorizes suit against federal agencies only. *Lasko v. United States Dep't of Justice*, No. 08-1850 (D.D.C. Dec. 8, 2008).  For this same reason, the Court now dismisses the complaint as to the Tioga County Sheriff's Department, Dan Eiklor, Patrick Hogan and John and Jane Does, the remaining parties named in the caption of the complaint as defendants to this action.  The DOJ is the proper party defendant.  *See* 5 U.S.C. §§ 551(1), 552(f)(1).

[2]    Although plaintiff appears to have submitted a FOIA request to the United States Attorney's Office for the Northern District of New York, *see* Compl., Attach. (April 3, 2007 letter from G.T. Suddaby, United States Attorney for the Northern District of New York), there are no factual allegations in the instant complaint pertaining to it.  The Court concludes that plaintiff does not challenge the agency's response to this request in this lawsuit and will not address the matter further.

("Hardy Decl.") ¶ 12; *see id.*, Ex. G (February 8, 2008 FOIA/PA Request) at 1-2.[3]   Plaintiff

asked that the FBI search both its general indices and electronic surveillance ("ELSUR") indices.

*Id.*, Ex. G at 2.  PHFO staff forwarded the request to the FBI's Washington, D.C. headquarters

("FBIHQ"), and its staff divided the request into three parts and assigned each part a reference

number.  *See id.* ¶¶ 13-15.

FBI staff returned to plaintiff the portion of the request, assigned FOIA No.

1112960, for information about the eight individuals, because he had submitted neither a privacy

waiver from each individual nor proof of each individual's death.  Hardy Decl. ¶ 13; *see id.*, Ex.

H (March 4, 2008 letter from D.M. Hardy, Section Chief, Records Information and

Dissemination Section, Records Management Division, FBIHQ).  Next, agency staff notified

plaintiff that the PHFO maintained no records pertaining to the Quick Lunch Diner or to plaintiff

himself.  Hardy Decl. ¶¶ 14-15; *see id.*, Ex. I-J (respectively, March 5, 2008 and March 10, 2008

letters from D.M. Hardy regarding FOIA Nos. 1111045 and 1111044).  On administrative appeal

to the DOJ's Office of Information and Privacy ("OIP"), the FBI's initial determinations were

affirmed.  *See* Hardy Decl. ¶¶ 16-18; *see id.*, Ex. O (April 21, 2008 letter from J.G. McLeod,

Associate Director, Office of Information and Privacy, regarding Appeal Nos. 08-1404 through

08-1406).

---

[3]      Although plaintiff submitted a FOIA request to the Washington, D.C.
headquarters office of the FBI on or about October 26, 2005, *see* Hardy Decl. ¶ 6 & Ex. A, there
are no factual allegations in the instant complaint pertaining to this request.  The Court concludes
that plaintiff does not challenge the FBI's response to the 2005 request and will not address the
matter further.

## B.  Requests to the Drug Enforcement Administration

Plaintiff's first request to the DEA sought only information about himself.  Def.'s Mem., Declaration of Leila Wassom ("Wassom Decl."), Ex. A (April 28, 2008 FOIA Request) at 1.  Because the DEA did not respond promptly, plaintiff submitted a separate four-page request about two months later.  Compl. ¶ 8; Wassom Decl., Ex. B (June 12, 2008 FOIA Request).  In addition to records about himself, plaintiff sought information pertaining to fourteen individuals (seven of whom were listed in his prior request to the PHFO), and to the Quick Lunch Diner.  Id., Ex. B at 2.  Plaintiff requested a waiver of fees associated with the processing of his request.  Id. at 2-3.  DEA staff combined the two requests and assigned a single tracking number, DEA FOIA No. 08-0996-P.  See id., Ex. D (October 27, 2008 letter from K.L. Myrick, Chief, Operations Unit, FOI/Records Management Section, DEA) at 1.

The DEA neither confirmed nor denied the existence of records pertaining to the fourteen individuals, explaining that "[i]n order to receive information about a third-party[,] it would be necessary for him to submit a release authorization from each third[] party."  Wassom Decl. ¶ 9.  Further, the DEA rejected a portion of his request because it did not constitute a proper request.  Specifically, the agency found that "his request for a search of all records maintained by the DEA was not specific enough, and that his request for records between the dates of January 2001 through January 2003 was tantamount to research."  Id. ¶ 10.  The DEA denied plaintiff's request for a fee waiver.  Id.  Lastly, the agency conducted a preliminary search for records pertaining to plaintiff, and that search yielded DEA Investigative Case File No. CO-03-0048.  Id.  Plaintiff was instructed to notify the DEA in writing if he wanted its staff to conduct a search for records maintained in this investigative file.  Id., Ex. D at 2.  Plaintiff

4

responded that he was "interested in . . . reports prior to January 29, 2003" pertaining to himself,

as well as "a full and compleat [sic] color copy of all photos taken[.]" *Id.*, Ex. H (December 30,

2008 letter to W.C. Little, Jr.).

Even though plaintiff filed an administrative appeal to the OIP, *see* Wassom

Decl., Ex. E (November 3, 2008 FOIA Appeal), the DEA began to process Investigative Case

File No. CO-03-0048 and ultimately released 42 pages of records in full, released 124 pages in

part, and withheld 14 pages in full. *See* Wassom Decl. ¶¶ 13, 15, 17.

## II.   DISCUSSION

### A.   Summary Judgment in FOIA Case

The Court may grant a motion for summary judgment "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c).  The moving party bears the burden of demonstrating an absence of a genuine issue

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the

moving party's affidavits may be accepted as true unless the opposing party submits his own

affidavits, declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453,

456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary

judgment."  *Defenders of Wildlife v. United States Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C.

2009) (citations omitted).  In a FOIA case, the Court may grant summary judgment based on the

information provided in an agency's supporting affidavits or declarations when they describe

"the documents and the justifications for nondisclosure with reasonably specific detail,
demonstrate that the information withheld logically falls within the claimed exemption, and are
not controverted by either contrary evidence in the record nor by evidence of agency bad faith."
*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v.
Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003).  Such affidavits or declarations are accorded "a
presumption of good faith, which cannot be rebutted by 'purely speculative claims about the
existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. Sec. & Exch.
Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central
Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

            The Court is mindful that the plaintiff is a *pro se* litigant whose pleadings and
other submissions are construed liberally.  *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972).
For this reason, the Court relies on plaintiff's general assertion that the DOJ improperly withheld
requested records, *see generally* Plaintiff's Consolidated Motion for Leave as in Bequest to File a
Five-Page Extended Reply Brief to Defendants' Opposition and with Disclosure Statement
Herein As Shown [Dkt. #19] ("Pl.'s Opp'n"), as a sign that plaintiff does not concede the
defendant's motion, notwithstanding his utter failure to challenge the adequacy of the agency's
searches or to address substantively any of the claimed exemptions.

### B.  Searches for Responsive Records

            Upon receipt of a request under the FOIA, the agency must search its records for
responsive documents.  *See* 5 U.S.C. § 552(a)(3)(A).  "An agency fulfills its obligations under
FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to

uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321,

325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see*

*also Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).  The agency

bears the burden of showing that its search was calculated to uncover all relevant documents.

*Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its

burden, the agency may submit affidavits or declarations that explain in reasonable detail the

scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In

the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an

agency's compliance with the FOIA.  *Id*. at 127.  If the record "leaves substantial doubt as to the

sufficiency of the search, summary judgment for the agency is not proper."  *Truitt v. Dep't of*

*State*, 897 F.2d at 542; *see also Valencia-Lucena v. United States Coast Guard*, 180 F.3d at 326.

1.  The FBI's Searches of its Central Records System and Electronic Surveillance Index

In the Central Records System ("CRS"), the FBI maintains its "administrative, applicant,

criminal, personnel, and other files compiled for law enforcement purposes."  Hardy Decl. ¶ 19.

The records are organized by subject matter, and a file's subject matter may relate to an

individual, organization, company, publication, activity, or foreign intelligence matter.  *Id.*

General indices arranged in alphabetical order are the means by which CRS records are retrieved.

*Id.* ¶ 20.  Entries in the general indices are either "main" entries or "reference" entries.  *Id.*  The

former "carr[y] the name corresponding with a subject of a file contained in the CRS;" the latter

"are generally only a mere mention or reference to an individual, organization, etc., contained in

a document located in another 'main' file."  *Id.*  The decision to index names other than subjects,

suspects, and victims is left to the discretion of the assigned Special Agent, the Supervisory

Special Agent at the field office conducting the investigation, and the Supervisory Special Agent

at FBIHQ. *Id.* ¶ 24.  Without an index, "information essential to ongoing investigations could

not be readily retrieved.  The FBI files would thus be merely archival in nature and could not be

effectively used to serve the mandated mission of the FBI." *Id.*  Thus, general indices to the CRS

files "are the means by which the FBI can determine what retrievable information, if any," its

files may contain on a particular subject. *Id.*  "Searches made in the General Indices to locate

records concerning a particular subject, such as Larry Lyle Lasko, are made by searching the

requested subject in the index." *Id.*  ¶ 21.

The FBI's electronic surveillance indices ("ELSUR") "are used to maintain

information on a subject whose electronic and/or voice communications have been intercepted as

a result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic

surveillance[.]"  Hardy Decl. ¶ 25.  ELSUR indices are a separate automated system of records

from the CRS, and both FBI Headquarters and all FBI field offices maintain ELSUR indices. *See*

*id.* ¶¶ 26-28.  The names of monitored subjects are retrievable through the FBIHQ or local field

office ELSUR indices." *Id.* ¶ 28.

In response to plaintiff's FOIA request to PHFO, FBI staff "searched the CRS for

main files using the search terms 'Lawrence Lyle Lasko' and 'Larry Lasko[,]' and 'Quick Lunch

Diner[.]'"  Hardy Decl. ¶ 31.  No responsive records were found. *Id.*  After plaintiff filed this

lawsuit, FBI staff 'conducted expanded searches" of the CRS , *id.* ¶ 32,"for main files and cross

references using [several] variations of the plaintiff's name[.]" *Id.* ¶ 33.  "[O]ne potentially

responsive cross reference" was located but, on inspection, FBI staff "determined that it did not

concern plaintiff." *Id.* A search of "the CRS for main files and cross references using the term

'Quick Lunch Diner'" yielded no responsive records. *Id.* ¶ 34. FBI staff also searched the

ELSUR indices using variations of plaintiff's name, and "located no responsive records as a

result of this search." *Id.* ¶ 35.

### 2. The DEA's Searches of its Investigative Reporting and Filing System

The DEA construed plaintiff's FOIA requests "as requests for criminal

investigative records held by the DEA that referenced . . . the plaintiff by name" or apparently

were related to him. Wassom Decl. ¶ 18. Such records, the declarant states, were "reasonably

likely to be found in the DEA Investigative Reporting and Filing System (IFRS)[.]" *Id.* ¶ 19.

One "retrieves investigative reports and information from IFRS" by using the DEA Narcotics and

Dangerous Drugs Information System ("NADDIS"). *Id.* ¶ 21. "Individuals are indexed and

identified in NADDIS by their name[s], Social Security Number[s], and/or date[s] of birth." *Id.*

A query of NADDIS using plaintiff's name, Social Security number and date of birth yielded one

criminal investigative file. *Id.* ¶¶ 22-23. From this file, DEA staff identified 143 pages of

records as responsive to plaintiff's request for information about himself. *Id.* ¶ 24.

### 3. The Agency's Searches for Responsive Records Were Adequate

Plaintiff is intent on litigating issues pertaining to his criminal trial rather than

responding substantively to the arguments set forth in defendant's motion for summary

judgment. *See generally* Pl.'s Opp'n. He contends that DEA Special Agents "knowingly and

willfully suppressed, concealed and tampered with and with[h]eld[] 'prior field reports' of

exculpatory evidence for Lasko and others while creating an adverse effect on or in a criminal

matter," *id.* at 9 (page numbers designated by the Court's electronic docket), specifically, in framing plaintiff for the crimes of which he has been convicted. *Id.* Plaintiff contends that he was denied access to evidence before or during the criminal proceedings against him, which, he alleges, would "point[] to his minor roles and lack of involvement in the scheme overall[.]" *Id.* at 14.

Nothing about plaintiff's criminal trial pertains to the issues presented in this FOIA action, which concern only whether the FOIA exemptions relied upon by DOJ to withhold records have been properly invoked. Plaintiff's personal interest in the requested records for the purpose of attacking his conviction or sentence is not relevant to this analysis. Any interest in the information for purposes of proving his innocence does not overcome the individuals' privacy interest. *See Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002) (finding that requester's "personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest"), *vacated and remanded*, 541 U.S. 970 (2004), *on remand*, 378 F.3d 115 (D.C. Cir.) (reaffirming prior decision), *reh'g denied*, 386 F.3d 273 (D.C. Cir. 2004), *cert. denied*, 544 U.S. 983 (2005); *see also United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989) (stating that the requester's identity has "no bearing on the merits of his . . . FOIA request").

Furthermore, there is no evidence that any of the FBI or DEA agents responsible for searching agency records to assure compliance with the FOIA had anything to do with the investigation or prosecution of Mr. Lasko. Indeed, it is virtually impossible that there would be any overlap in agency personnel doing FOIA work and those investigating or assisting in

10

prosecuting crimes.  On this record, the Court concludes that the methods by which the FBI and

DEA staff searched for responsive records were reasonable under the circumstances.

## C. Exemptions

Under the FOIA, an agency may withhold documents responsive to a FOIA

request only if the responsive documents fall within one of nine enumerated statutory

exemptions.  *See* 5 U.S.C. § 552(b).  An agency must demonstrate that "each document that falls

within the class requested either has been produced, is unidentifiable, or is wholly [or partially]

exempt from the [FOIA's] inspection requirements."  *Goland v. Central Intelligence Agency*, 607

F.2d 339, 352 (D.C. Cir. 1978); *see also Students Against Genocide v. Dep't of State*, 257 F.3d

828, 833 (D.C. Cir. 2001).

### 1.  Exemption 2

Exemption 2 shields from disclosure information that is "related solely to the

internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The phrase

"personnel rules and practices" is interpreted to include not only "minor employment matters"

but also "other rules and practices governing agency personnel."  *Crooker v. Bureau of Alcohol,*

*Tobacco and Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc).  The "information need

not actually *be* 'rules and practices' to qualify under [E]xemption 2, as the statute provides that a

matter 'related' to rules and practices is also exempt."  *Schwaner v. Dep't of the Air Force*, 898

F.2d 793, 795 (D.C. Cir. 1990) (emphasis added).

Exemption 2 applies if the information that is sought meets two criteria.  *See Pub.*

*Citizen, Inc. v. Office of Mgmt. and Budget*, 569 F.3d 434, 439 (D.C. Cir. 2009).  First, such

information must be "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d at 1074; *see Nat'l Treasury Employees Union v. United States Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1985).  Second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest." *Schwaner v. Dep't of the Air Force*, 898 F.2d at 794 (citations omitted).

"Predominantly internal documents the disclosure of which would risk circumvention of agency statutes are protected by the so-called 'high 2' exemption." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  "High 2" exempt information is "not limited . . . to situations where penal or enforcement statutes could be circumvented." *Id.* at 1208.  If the material at issue merely relates to trivial administrative matters of no genuine public interest, it is deemed "low 2" exempt material.  *See id.* at 1207; *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983).

The DEA withholds "violator identifiers" consisting of Geographical Drug Enforcement Program ("G-DEP") codes and NADDIS numbers.  Wassom Decl. ¶ 48.  The declarant explains that a G-DEP code is assigned to each case when the investigative file is opened, and the code "indicates the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity." *Id.*  NADDIS numbers are "multi-digit numbers assigned to drug violators and suspected drug violators known to the DEA," as well as "entities that are of investigative interest." *Id.*  "Each number is unique and is assigned to only one violator within the DEA NADDIS indices." *Id.*  Both G-DEP and NADDIS numbers "are part of [the] DEA's internal

system of identifying information and individuals." *Id.* According to the declarant, release of G-DEP codes "would help identify priority given to narcotic investigations, types of criminal activities, and violator ratings." *Id.* ¶ 48. With this information, suspects could change their behavior so as to avoid detection and otherwise thwart the DEA's investigative and law enforcement efforts. *Id.*

Both G-DEP codes and NADDIS numbers fall within the scope of Exemption 2 and routinely are withheld. *See, e.g., Bullock v. Fed. Bureau of Investigation*, 577 F. Supp. 2d 75, 81 (D.D.C. 2008) (concluding that violator and informant identifier codes, including G-DEP codes and NADDIS numbers, properly are withheld under Exemption 2); *Barbosa v. Dep't of Justice*, No. 06-0867, 2007 WL 1201604, at *3 (D.D.C. Apr. 23, 2007) (concluding that the DEA properly withheld violator identifiers consisting of G-DEP codes, NADDIS numbers, and confidential informant numbers, which are part of the agency's internal system of identifying information and individuals); *Mendoza v. Drug Enforcement Admin.*, 465 F. Supp. 2d 5, 10-11 (D.D.C. 2006) (finding that "there is not a public interest sufficient to override the agency's appropriate interest in maintaining the secrecy of . . . internal procedures" regarding violator identifiers); *Wilson v. Drug Enforcement Admin.*, 414 F. Supp. 2d 5, 12-13 (D.D.C. 2006) (concluding that G-DEP codes and NADDIS numbers properly are withheld as "high 2" exempt information, and that NADDIS numbers, insofar as they are part of the DEA's internal system of identifying information in which there is no public interest, properly are withheld as "low 2"

exempt information).  The Court therefore concludes that the DEA's decision to withhold G-DEP codes and NADDIS numbers under Exemption 2 was proper.[4]

### 2.  Exemption 7

#### a.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

The DEA, the declarant explains, is responsible for "the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, *see* 21 U.S.C. § 801 *et seq*.," Wassom Decl. ¶ 25, and investigates incidents "involving the trafficking in

---

[4]      The DEA invokes Exemption 2 in conjunction with Exemptions 7(C) and 7(F) to withhold NADDIS numbers assigned to third parties.  Wassom Decl. ¶ 48.  Because the Court concludes that NADDIS numbers properly are withheld under Exemption 2, there is no need to consider the applicability of Exemptions 7(C) and 7(F) with respect to the same information.  *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and national levels; seize[s] and forfeit[s] assets derived from, traceable to, or intended to be used for illicit drug trafficking[;] cooperate[s] with counterpart agencies abroad[,] and . . . exchange[s] information in support of drug traffic prevention and control." *Id.* ¶ 50.  Information collected in the course of performing these functions is "placed into DEA investigative files that are maintained in IFRS." *Id.* ¶ 25.  The DEA office commencing an investigation opens the investigative file, and the file's title typically is "the name of the principal suspect violator or entity known to DEA at the time the file is opened." *Id.* ¶ 26.  The DEA "does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest." *Id.*  Information obtained in the course of an investigation "is systematically gathered and included in the investigative case file," and such information may "relate[] to the case subject" or to "other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file." *Id.* ¶ 27.

The declarant describes the records responsive to plaintiff's FOIA request as "criminal investigative records . . . compiled during criminal law enforcement investigations of the plaintiff and several third parties." Wassom Decl. ¶ 51.  The records include Reports of Investigation ("ROI") and other materials, including administrative subpoenas, reports of drugs and other property collected, purchased or seized, chemical analysis reports, applications for search warrants, an arrest warrant, a criminal complaint, a criminal judgment form and arrest scene photographs. *See id.* ¶¶ 28-41 (describing DEA Forms 6, 6a, 7, 7a, 12, 48, 202, and 210).

The DEA has met its threshold obligation by showing that these responsive records were compiled for law enforcement purposes.

15

b.  Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  "To determine whether Exemption 7(C) applies, [courts] 'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information.'"  *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)); *see Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

Generally, the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial."  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F. 2d at 1205.  "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *Id.* at 1206; *see Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).

"[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. United States Dep't of Justice*, 968 F.2d at 1282 (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 773).  If the public interest is government wrongdoing, then the requester must "produce evidence that would warrant a belief

16

by a reasonable person that the alleged Government impropriety might have occurred." *Boyd v.*

*Criminal Div. of the United States Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)).

Under Exemption 7(C), the DEA withholds "[t]he identities of DEA Special

Agents, state/local law enforcement officers, a DEA Attorney and DEA laboratory personnel[.]"

Wassom Decl. ¶ 55. The declarant explains that the Special Agents and other law enforcement

officers and personnel "were assigned to handle tasks relating to the official investigation into the

criminal activities of the plaintiff and other individuals," and that they were or still are "in

positions of access to information regarding official law enforcement investigations." *Id.* ¶ 56;

*see id.* ¶ 57. If their identities were disclosed, "they could become targets of harassing inquiries

for unauthorized access to information pertaining to ongoing and closed investigations." *Id.* ¶

56; *see id.* ¶ 57. With respect to all of these third parties, disclosure of their identities puts them

"in a position that they may suffer undue invasions of privacy, harassment and humiliation from

disclosure of their identities in the context of a criminal law enforcement investigation." *Id.* ¶ 55.

Against the recognized privacy interests of these third parties, the DEA weighs the

public interest in disclosure. *See* Wassom Decl. ¶¶ 53-54, 56. Its declarant explains that

disclosure would not "inform the plaintiff or the general public about DEA's performance of its

mission to enforce federal criminal statutes and the Controlled Substances Act, and/or how [the]

DEA conducts its internal operations and investigations." *Id.* ¶ 54. The Court concurs.

Law enforcement personnel "have a legitimate interest in preserving the secrecy

of matters that conceivably could subject them to annoyance or harassment in either their official

or private lives" *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980).

17

Similarly, "third parties who may be mentioned in investigatory files" and "witnesses and informants who provide information during the course of an investigation" have an "obvious" and "substantial" privacy interest in their personal information. *Nation Magazine v. United States Customs Serv.*, 71 F.3d at 894; *see Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that the agency properly withheld "identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure"), *cert. denied*, 534 U.S. 1134 (2002).

Plaintiff articulates no public interest in disclosure of the names of and identifying information about these federal, state and local law enforcement officers and support personnel. His intention to use information in these records to prove his claim of innocence is not a public interest, as "an individual's personal interest in challenging his criminal conviction is not a public interest under FOIA because it 'reveals little or nothing about an agency's own conduct.'" *Willis v. United States Dep't of Justice,* 581 F. Supp. 2d 57, 76 (D.D.C. 2008) (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773). The Court concludes that the DEA properly withheld this information under Exemption 7(C).

c. Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source.

18

5 U.S.C. § 552(b)(7)(D).  A confidential source may be an individual, such as a private citizen or

paid informant, or it may be a state, local or foreign law enforcement agency.  *Lesar v. Dep't of*

*Justice*, 636 F.2d at 491.  There is no assumption that a source is confidential for purposes of

Exemption 7(D) solely because the source provides information to a law enforcement agency in

the course of a criminal investigation.  *See United States Dep't of Justice v. Landano*, 508 U.S.

165, 181 (1993).  Rather, a source's confidentiality is determined on a case-by-case basis.  *Id*. at

179-80.  "A source is confidential within the meaning of 7(D) if the source provided information

under an express assurance of confidentiality or in circumstances from which such an assurance

could reasonably be inferred."  *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159

(D.C. Cir. 1995) (citing *United States Dep't of Justice v. Landano*, 508 U.S. at 170-74).

The declarant states that, among the records responsive to plaintiff's FOIA request

is "material provided by [an] individual[] other than a DEA agent[.]"  Wassom Decl. ¶ 59.

Plaintiff was convicted "of the manufacture, conspiracy to distribute, and possession with intent

[to distribute] methamphetamine," and "a firearm and ammunition [were] recovered from the

plaintiff's property."  *Id.* ¶ 61.  The declarant asserts that in these circumstances, "[i]t is

reasonable to infer that the individual who provided information about the plaintiff would fear

for his/her safety, since violence is inherent in the trade in illicit substances such as

methamphetamine[.]"  *Id.*  In addition, the declarant asserts that release of the source's name

"could jeopardize DEA operations, since his/her cooperation and that of similarly situated

individuals could be needed in future criminal investigations."  *Id.*  Accordingly, the DEA

asserts, an implied assurance of confidentiality can be inferred.

Courts have held that the violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source who provides information to investigators. *See Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (withholding source supplying information about conspiracy to distribute crack and powder cocaine); *Mendoza v. Drug Enforcement Admin.*, 465 F. Supp. 2d at 13 (concluding that a source who provided information pertaining to the requester's methamphetamine trafficking activities did so under an implied assurance of confidentiality); *Chavez-Arellano v. United States Dep't of Justice,* No. 05-2503, 2006 WL 2346450, at *9-10 (D.D.C. Aug. 11, 2006)), *appeal dismissed*, No. 06-5279, 2007 WL 2910057 (D.C. Cir. Sept. 19, 2007) (per curiam); *see also Engelking v. Drug Enforcement Admin.*, 119 F.3d 980, 981 (D.C. Cir. 1997) (concluding that a source provided information about requester's methamphetamine distribution operation, which was the subject of "multiple cooperative investigations by federal, state, and local law enforcement agencies, [and] which ultimately resulted in [requester's] conviction following the seizure of two methamphetamine laboratories, six handguns, and a rifle," under an implied assurance of confidentiality), *cert. denied*, 522 U.S. 1094 (1998). The Court concludes that the DEA properly withheld the identities of and information provided by the confidential sources under Exemption 7(D).

### d. Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The Court has reviewed the *Vaughn* Index, *see*

Wassom Decl, Ex. K, and finds that the DEA relies on Exemption 7(F) in conjunction with Exemption 7(C) with respect to the same information. Because the Court already has concluded that the same information properly was withheld under either Exemption 7(C), there is no need also to consider the applicability of Exemption 7(F) with respect to this information. *See Simon v. Dep't of Justice*, 980 F.2d at 785.

### D. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. United States Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

The Court has reviewed the DEA's declaration and the *Vaughn* Index submitted in support of its motion, and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). The Court finds that the DEA has released all reasonably segregable material.

III.   CONCLUSION

The Court concludes that the FBI has established that its searches for records responsive to plaintiff's FOIA request were reasonable under the circumstances, and that its "no records" response was appropriate.  The DEA has established that its search for responsive records was reasonable and that it properly withheld information under Exemptions 2, 7(C) and 7(D).  Because no material facts are in dispute and because both the FBI and the DEA are entitled to judgment as a matter of law, the Court will grant summary judgment in defendant's favor.  An appropriate Order accompanies this Opinion.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  February 17, 2010